Michael R. Shapiro (SBN: 37011  )
Attorney at Law
11500 Olympic Blvd. Suite 400
Los Angeles, California 90064
Phone: (310) 472-8900
Fax: (310) 472-4600
MickeyIMC@aol.com

Peter Q. John (*pro hac vice forthcoming*)
THE QUESTAVERD LAW FIRM, LLC
365 Canal Street, Suite 2260
New Orleans, Louisiana 70130
Phone: (225) 757-8496
Fax: (504) 777-3167
TheQLawFirm@gmail.com

*Attorneys for Plaintiffs*
*Miriam Bavly and Ariel Bavly*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MIRIAM BAVLY, an individual; and ARIEL BAVLY, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> A2 PRODUCTIONS, LLC, a California limited liability company; THEODORE FLORENCE, an individual; ANDRE LINDAL, an individual; and WELBORN ANTHONY PRESTON, an individual, <br><br> Defendants. | **CASE NO.:** _____ <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF FIDUCIARY DUTY CA CIV CODE § 3333;** <br> **(2) CONVERSION OF FUNDS;** <br> **(3) DECLARATORY RELIEF – 28 U.S.C. § 2201; AND** <br> **(4) INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Miriam Bavly and Ariel Bavly (jointly "Plaintiffs") hereby assert the following claims for relief against defendants A2 Productions, LLC, a California limited liability company (the "Company" and or "A2"); Theodore Florence (Mr. Florence"); Andre Lindal ("Mr. Lindal"); and Welborn Anthony Preston ("Mr. Preston") (collectively "Defendants") as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff Ariel is a singer, songwriter, and performer who, through laser-focused efforts and thousands of dedicated hours, has been working to break out into the professional world, by the sole efforts of Plaintiffs. From a young age, Ariel's biggest dream was to become a professional vocal artist and performer. Seeking to exploit Ariel's dreams and capitalize on Plaintiffs' hard work, the A2 Company, Mr. Lindal, and Mr. Preston egregiously and fraudulently misrepresented to Plaintiffs that they were influential, well-seasoned, and current music business professionals who had the resources, know-how, network contacts, and previous marketing and promotion experience to immediately escalate Ariel's music career. Likewise, the Company's CEO, Mr. Florence, misrepresented himself as an ethical financial manager with ivy league credentials and a wealth of experience having previously worked for Arista Records, a SONY music company. These lures were used to convince Plaintiffs to: 1) enter into an agreement styled as "Exclusive Artist Agreement" (the "Agreement") for producing, promoting, marketing, and the sale

of Album 1; and 2) entrust $400,000.00 (FOUR HUNDRED THOUSAND AND NO/100 DOLLARS) to Defendants to fulfill their obligations under the Agreement.

2.    Judicial intervention is necessary because a significant portion of the money entrusted to Defendants has been used for their personal expenses while none of Defendants' obligations under the Agreement have been provided. Accordingly, Plaintiffs bring this action to recover damages for Defendants' wrongdoing and to enjoin Defendants from further defrauding other unsuspecting members of the public.

## THE PARTIES

3.    Miriam Bavly is the natural mother of Ariel Bavly and is both a resident and domiciliary of Middlesex County, State of Massachusetts.

4.    Ariel Bavly is an accomplished singer, songwriter who, through the Bavly family efforts, successfully began publishing and distributing her own creative works at the age of sixteen (16). Ariel is a resident and domiciliary of Middlesex County, State of Massachusetts.

5.    According to information set forth on the California Secretary of State website, Plaintiffs allege that the Company is a limited liability company organized under the laws of the State of California, which has been registered as an entertainment business since July 27, 2016. Plaintiffs further allege that the Company's principal place of business is 6416 5th Street, Los Angeles, California, 90048. Mr. Lindal and Mr. Preston are listed as the Company's managers/members. On information and belief, Plaintiffs allege that Mr. Florence is the Company's

CEO. Upon information and belief, Plaintiffs further allege that Mr. Preston is an authorized agent of the Company.

6.     Upon information and belief, Plaintiffs allege that Mr. Florence is an individual residing in Atlanta, Georgia, but who has sufficient contact with this jurisdiction because he regularly conducts business, as a manager/member of the Company, which has its principal place of business in Los Angeles, California.

7.     Upon information and belief, Plaintiffs allege that Mr. Lindal is an individual residing in Los Angeles, California.

8.     Upon information and belief, Plaintiffs allege that Mr. Preston is an individual residing in Los Angeles, California.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). This Court also has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs are citizens of Massachusetts while Defendants the Company, Mr. Lindal, and Mr. Preston are citizens of California, and Mr. Florence is a citizen of Georgia. The amount in controversy exceeds the jurisdictional minimum of $75,000.

10.     This Court has personal jurisdiction over Defendants because Mr. Lindal and Mr. Preston reside in this district, Mr. Florence regularly conducts business in this district and is a manager/member of the Company which is located

in this district, and the Company has its principal place of business in this district. Moreover, Defendants have transacted business in this district and committed bank fraud and tortious acts within the State of California by scheming to extract funds deposited and controlled by City National Bank in California as payment for services not actually performed.

11.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Company, Mr. Lindal, and Mr. Preston reside in this district, Defendants regularly conduct business in this district, and the asserted claims arise from Defendants' conduct within this district, including fraudulent conversion of funds in the form of a payment scheme for professional services never performed.

## **FACTS COMMON TO ALL CAUSE OF ACTION**

### A.     **Ariel and Miriam had Creative Momentum Prior to Engaging A2**

12.     Ariel exhibited a proclivity for the performing arts from the age of six (6).  By the age of thirteen (13), she has already participated in dozens of musical theatre performances and countless hours of vocal, acting, and dance training. In High School, she moved heavily into the commercial world, writing, producing, and performing original music, working in film and television, along with spending sixteen (16) hours per week with the preprofessional dance program, Boston Youth Moves (a modern-based teen dance program that trained participants to be viable candidates for Broadway, Alvin Ailey, and other notable dance companies around

the world). By the age of sixteen (16), Ariel was writing and producing music, selling it on iTunes and Amazon, while simultaneously preparing and auditioning for Broadway and musical theatre conservatories.

13.     Plaintiff Miriam is the natural mother of Ariel and has always been committed to supporting her daughter's aptitude and talents by seeking opportunities for skill and professional development. As she recalls, Miriam has accompanied Ariel on various studio appointments for "hundreds of hours", along with many trips to New York City and Los Angeles to pursue training and professional work. Through their own family team efforts, several of Ariel's songs were published on multiple commercial distribution and social hosting websites. Some of the places Plaintiffs were able to expose Ariel's creative works were: iTunes, YouTube, Spotify, and Amazon, to name a few, along with other similar music and social media outlets.  Miriam and Ariel were also able to place her early music videos in fitness centers, retail outlets, clubs, resort hotels, bowling alleys and college bookstores, and on regional television in New York, California, and Florida, as well as internationally in Germany, France, and other various European and south Asian nations. Miriam functioned as a manager for Ariel for many years.

**B.     For Approximately Five Months Defendants A2 were Not in a Position to Reasonably Fulfill the Obligations They Committed to**

14.     Mr. Lindal and Mr. Preston made it clear to Miriam that they were influential and well-seasoned current operatives (former music label executives), in the music business, ready and capable of providing specific services immediately.

15.     They boasted about their experience getting label deals for other independent artists and collaborations with major label artists such as Justin Bieber.

16.     Their influence and ability to help further Ariel's music career by producing, promoting, and marketing her music *aggressively* were the selling points they made to Miriam and Ariel. However, the company is still a suspended entity in California as of the date of this filing (*Status; SOS/FTB SUSPENDED at* *https://businesssearch.sos.ca.gov/CBS/Detail* ).

17.     Mr. Lindal and Mr. Preston led Miriam and Ariel to believe that they had the resources and were positioned to immediately move her music career forward.

18.     There existed a fiduciary duty between Miriam, Ariel and A2 because the party's relationship was controlled by an agreement in which A2 had to perform specific duties. A2 was limited by the agreement to spend money with approval of Ariel and only for specific purposes. A2 failed in their fiduciary duty by using Miriam and Ariel's money in an unauthorized manner.  *See Exhibit B.*

19.     Additionally, the Company's CEO, Theodore Florence, held himself out to be a seasoned financial manager. *See Exhibit A.*

20.    On or about August 31st, 2018, Miriam directed a wire transfer of $400,000.00 (FOUR HUNDRED THOUSAND AND NO/100 DOLLARS), to City National Bank, Account Number ending in 3069 and on behalf of Ariel for the following services to be rendered by A2 Productions: production, promotion, and marketing of Ariel's music.

21.    The agreement styled as "Exclusive Artist Agreement", obligated A2 Productions to use the funds forwarded by Miriam's direction solely for the agreed upon services to include the sale of Album 1. *See Exhibit B*.

22.    Since the August 31st money (funds) transfer, not a single completed and commercially viable musical work was produced, promoted, marketed, or sold by A2 for Ariel.

23.    Likewise, since August 31st, 2018, approximately one hundred thousand dollars ($100,000.00) or more has been spent from Ariel's "Album 1 Fund" at City National Bank.

24.    A significant portion of the money used by Defendants was converted to personal use by A2's principals using an American Express Card payment scheme, a process Mr. Preston has referred to as "*by hook and crook*".

25.    On or about November 30, 2018, via telephone, Miriam requested an accounting and a return of funds spent, both of which were rebuffed by Defendants with ridicule, insults, and emotional abuse.

26.     On or about the 14th of January 2019, Mr. Florence and Mr. Preston left the United States to take an elaborate vacation to Ghana, Africa.

*27.*     On or about January 22, 2019, Miriam amicably requested return of the money she gave to Defendants via email and next day air carrier but to no avail. *See Exhibits C and D.*

## FIRST CAUSE OF ACTION:
## BREACH OF FIDUCIARY DUTY CA CIV CODE § 3333

28.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 27 above as though fully set forth herein.

29.     On information and belief, Defendants used at least two artists' funds that were on deposit at City National Bank to fraudulently convert funds from designated purposes into their own American Express accounts in the form of a payment scheme Mr. Preston described as "*hook and crook*".  In fact, when asked by a witness, who will testify, how they (Defendants) are funding operations, Mr. Preston responded, "we have no funds we operate "*niggafied*"." *See Exhibit F.*

30.     On information and belief, Mr. Preston specifically admitted to recently (January 2019) moving $2,000.00 (TWO THOUSAND AND NO/100 DOLLARS) from Ariel's Album 1 fund for personal use.

31.     On information and belief, Miriam directed the transfer of funds to Defendants into a bank account, and not into their hands, so the funds would be

protected by applicable federal deposit banking laws and internal controls expected

of an entity organized and designated under the Internal Revenue Service Limited

Liability corporation tax designation. *See Exhibit E.*

32.    The banking controls for deposited funds are factually a key part of the

inducement for Miriam directing the transfer funds for her daughter's dream to

Defendants, through and under the control of City National Bank. *See Exhibit E.*

33.    All of the funds entrusted to Defendants for Ariel's Album 1 were only

transferred because of the clear understanding that the funds would be controlled

and held at City National Bank.

34.    By scheming to extract payments for work not done and by using funds

from two artists' bank accounts, Defendants committed bank fraud in what Mr.

Preston described as a "*hook and crook*" and "*niggafied*" bank payment scheme.

## SECOND CAUSE OF ACTION:
## CONVERSION OF FUNDS

35.    Plaintiffs reallege and incorporate by reference paragraphs 1 through

34 above as though fully set forth and applicable herein.

36.    As set forth above, Defendants wrongfully and willfully exercised

dominion over Ariel's funds intended for Album 1.

37.    Defendants deprived Ariel of the use of approximately $100,000.00

(ONE HUNDRED THOUSAND AND NO/100 DOLLARS) of her Album 1

funds permanently without lawful justification. They certainly did not have the permission of Miriam or Ariel.

38.     Miriam and Ariel both retained a special possessory interest and right of possession in Ariel's Album 1 fund because the funds were an advance transfer by Miriam specifically earmarked for Album 1 and not for personal and or operational expenses of A2.

39.     Miriam and Ariel retained an immediate right to repossess the money advanced to A2 if it was not being used for the designated Album 1 purposes thereby establishing a legitimate claim to use of exclusivity of the Album 1 fund.

40.     The Album 1 fund is a specific and identifiable sum of $400,000.00 (FOUR HUNDRED THOUSAND AND NO/100 DOLLARS) directed by Miriam to a City National Bank account for Ariel's Album 1 production, promotion, marketing, and sale.

41.     Defendant's use of Ariel's Album 1 fund in a manner inconsistent with the designated and specific purposes was a wrongful assumption of control and dispossession of Miriam's and Ariel's approximately $100,000.00 (ONE HUNDRED THOUSAND AND NO/100 DOLLARS).

42.     Defendants have not produced a single completed work although they dispossessed Miriam and Ariel of approximately twenty five percent of the Album 1 funds.

43.    This amount is significant because the four specific purposes of the fund can no longer be achieved without damage to the quality, intensity, and volume of production, promotion, marketing, and sale of Album 1.

44.    Ariel and Miriam already had creative momentum and market presence for Ariel's musical woks before engaging A2.

45.    Defendants collectively damaged Ariel's creative momentum by taking the funds Miriam deposited for personal items purchase and operational expenses while they generated no other significant income or revenue.

46.    Defendants' use of Plaintiffs' money between August 31, 2018, and January 26, 2019, could easily have resulted in the production of a single, and the associated promotion and marketing during the critical fourth and first quarters of the 2018/2019 music business cycle, respectively.

47.    In addition to the actual amount of money converted for use, the damage to Ariel's promotion and marketing momentum can be calculated in lost opportunities to perform at South by Southwest and holiday promotions including but not limited to Christmas and Valentine's Day and Coachella (April 12-14). The foregoing business opportunities were squandered over a period of almost five months and can never be replaced.

## THIRD CAUSE OF ACTION:
## DECLARATORY RELIEF – 28 U.S.C. § 2201

48.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 47 above as though fully set forth herein.

49.     Plaintiffs have requested and subsequently demanded return of their remaining funds from Defendants since November 30, 2018. Subsequently and specifically, on January 22, 2019, Plaintiff Miriam formally demanded return of funds via email and next day air carrier to Defendants. To date, defendants have failed to respond to Plaintiffs' requests and to return the remaining funds. In fact, the funds remain at City National Bank, and while the account was temporarily frozen at Miriam's request, if relief is not granted before the freeze is lifted, Defendants will regain access to the funds and continue to have opportunities to use that money for their own personal gain.

50.     Accordingly, an actual and justiciable controversy currently exists, and a judicial declaration is necessary and appropriate at this time under the circumstances in order that it be determined that Defendants have no right or authority to continue accessing, using, or converting the Album 1 funds. If no judicial declaration is made, Defendants may inequitably continue to use Plaintiffs' funds in support of their personal and operational needs and manipulating expense reports while they treat Ariel "*like a bar of soap*" and put her career on the self. It is clear by these statements made by Anthony, defendants have no intention of using the funds on deposit at City National Band as designated only for Album1.

51.     Plaintiffs therefore seek a declaration from the court that: Defendants are prohibited from using any additional funds transferred by Miriam to A2 on deposit at City National Bank, or any bank, financial institution, or account where Defendants may have converted, transferred, or secreted Ariel's Album 1 fund.

## FOURTH CAUSE OF ACTION:
## INJUNCTIVE RELIEF

52.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 51 above as though fully set forth herein.

53.     Defendants' wrongdoing described herein is substantial and it will continue to adversely damage Plaintiffs in an amount and to a degree that cannot be reasonably and fully addressed by any remedy at law.

54.     Defendants' wrongdoing described herein has caused and will continue to cause irreparable injury to Ariel's quality, intensity, and volume of production; promotion, marketing, and sale of Album 1; promotion and marketing momentum; and past, present, and future performance and income opportunities.

55.     Plaintiffs therefore request that the Defendants be permanently enjoined from using any additional funds transferred by Miriam to A2 on deposit at City National Bank, or any bank, financial institution, or account where Defendants may have converted, transferred, or secreted Ariel's Album 1 fund.

## PRAYER FOR RELIEF

CASE NO.: _____                                                    14   OF 18

WHEREFORE, Plaintiffs pray as follows:

**For Plaintiffs' First Cause of Action:**

1. Judgment be entered in Plaintiff's favor;

2. Plaintiffs recover all damages including: (i) actual damages; and (ii) Plaintiff's reasonable attorneys' fees (if applicable);

3. Defendants be permanently enjoined from continuing the wrongful conduct alleged herein; and

4. Judgment granting Plaintiffs any such other relief as this Court deems just and proper.

**For Plaintiffs' Second Cause of Action:**

5. Statutory damages or actual damages, whichever is greater, according to proof;

6. For expenses in pursuit of their property, including but not limited to, attorney's fees and costs of suit;

7. For any special damages resulting from the conversion;

8. Plaintiffs are entitled to money damages pursuant to California Civil Code § 3336 for the value of the time of conversion with interest;

9. Fair compensation for the time and money spent to secure the return of the entire Album 1 fund;

10. Punitive and or exemplary damages for the "*hook and crook, niggafied*" malice expressed by the actual words of Mr. Preston when describing how A2 takes money from Ariel's Album 1 fund;

11. Recovery of the balance of Ariel's Album 1 fund, the actual amount of money converted, and damages for its detention, including future earnings.

12. For punitive damages in an amount according to proof; and

13. For such other relief as the Court deems just and proper.

**For Plaintiffs' Third Cause of Action:**

14. A declaratory judgment that Defendants are prohibited from using any additional funds transferred by Miriam to A2 on deposit at City National Bank, or any bank, financial institution, or account where Defendants may have converted, transferred, or secreted Ariel's Album 1 fund; and

15. For such other or further relief as the Court deems just and proper.

**For Plaintiffs' Fourth Cause of Action:**

16. Judgment be entered permanently enjoining Defendants from using any additional funds transferred by Miriam to A2 on deposit at City National Bank, or any bank, financial institution, or account where Defendants may have converted, transferred, or secreted Ariel's Album 1 fund; and

17. For such other or further relief as the Court deems just and proper.

DATED:   January 29, 2019

The Law Offices of Michael R. Shapiro

CASE NO.: _____

A Professional Corporation

By: */s/ Michael R. Shapiro*
Michael R. Shapiro

The Questaverd Law Firm, LLC

By: /s/ *Peter Q. John*
Peter Q. John (pro hac vice forthcoming)

Attorneys for Plaintiffs
*Miriam Bavly and Ariel Bavly*


## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand a trial by jury as to all issues properly so tried.


DATED:   January 30, 2019

The Law Offices of Michael R. Shapiro
A Professional Corporation

By: */s/ Michael R. Shapiro*
Michael R. Shapiro

The Questaverd Law Firm, LLC

By: /s/ *Peter Q. John*
Peter Q. John (pro hac vice forthcoming)

Attorneys for Plaintiffs
*Miriam Bavly and Ariel Bavly*

CASE NO.: _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Verification

 I Miriam Bavly have read the foregoing complaint and I have personal knowledge of the contents thereof. The matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.  I declare under penalty of perjury the foregoing is true and correct.

DocuSigned by:

*Miriam Bavly*

C369CDF084A84AF...

_____

Miriam Bavly

Plaintiff

CASE NO.: _____                                          18   OF 18